**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Ronald Berglund; Light Technology
Systems, LLC; Kempton Joseph and
Rosita Moreno Coady; Kempton &
Associates, Inc.; Michael Rubin; Michael
Rubin Associates L.L.C.; Kristin and
Jason DelMonte; Sharon Karsten;
Kardel, LLC; Paul Amoruso; CapitalWorks,
LLC; Revella, LLC; Bill Korner;
Alexandria Korner; June 3, Alpharetta, LLC;
June 3, Duluth, LLC; June 3, Midtown, LLC;
June 3, Centennial, LLC; June 3, Inc.;
Wayne Alden; JJJW Enterprises, LLC;
Bailey Force, LLC; Cougar, LLC; Patty
Enterprises, LLC; and Wayne Alden d/b/a
Sona Laser Center,

        Plaintiffs,

   v.

Cynosure, Inc.,

        Defendant.

**MEMORANDUM OPINION**
**AND ORDER**
Civil No. 06-3901 ADM/AJB

_____

Kristy L. Zastrow, Esq. and W. Michael Garner, Esq., Dady & Garner, P.A., Minneapolis, MN, argued on behalf of Plaintiffs.

Richard A. Johnston, Esq., Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA and David R. Crosby, Leonard Street and Deinard, P.A., Minneapolis, MN, argued on behalf of Defendant.
_____

**I. INTRODUCTION**

On March 30, 2007, oral argument before the undersigned United States District Judge was heard on Defendant Cynosure, Inc.'s ("Cynosure") Amended Motion to Dismiss [Docket No. 16]. In their Amended Complaint [Docket No. 10], Plaintiffs Ronald Berglund ("Berglund"); Light Technology Systems, LLC ("LTS"); Kempton Joseph and Rosita Moreno Coady (the "Coadys"); Kempton & Associates, Inc. ("KAI"); Michael Rubin ("Rubin"); Michael

Rubin Associates, L.L.C. ("MRA"); Kristin and Jason DelMonte (the "DelMontes"); Sharon Karsten ("Karsten"); Kardel LLC ("Kardel"); Paul Amoruso ("Amoruso"); CapitalWorks, LLC ("CapitalWorks"); Revella, LLC ("Revella"); Bill and Alexandria Korner (the "Korners"); June 3, Alpharetta, LLC; June 3, Duluth, LLC; June 3 Midtown, LLC; June 3, Centennial, LLC; June 3, Inc. (the June 3 Plaintiffs collectively are referred to as "June 3"); Wayne Alden ("Alden"); JJJW Enterprises, LLC ("JJJW"); Bailey Force, LLC ("Bailey Force"); Cougar, LLC ("Cougar"); Patty Enterprises ("Patty"); and Wayne Alden d/b/a Sona Laser Center (JJJW, Bailey Force, Cougar, Patty, and Wayne Alden d/b/a Sona Laser Center are collectively referred to as the "Alden Franchisees") (all Plaintiffs collectively are referred to as "Plaintiffs") assert various claims of fraud, negligent misrepresentation, violation of state consumer protection statutes, conspiracy, and violation of state franchise statutes. For the reasons set forth below, Cynosure's Motion is granted.

## II. BACKGROUND

Cynosure is a Delaware Corporation with its principal place of business in Westford, Massachusetts. Am. Compl. ¶ 18. The company develops and markets laser treatment systems used by physicians for hair removal. Crosby Aff. [Docket No. 19] Ex. 1 at 1. From November 2000 through May 2004, Cynosure owned a 40% stock interest in Sona International Corporation ("SIC"), the parent company of Sona Laser Centers Inc. ("SLC") (SIC and SLC collectively are "Sona"). Am. Compl. ¶¶ 1, 51; Crosby Aff. Ex. 2 at 33.[1]

In the late 1990s, Dennis and Cookie Jones (the "Joneses") founded a Sona Laser Center

---

[1] The Amended Complaint alleges Cynosure owned 40% of SLC. However, Cynosure's Form S-1A indicates that Cynosure owned 40% of SIC. Nevertheless, the Court will treat Cynosure's ownership interest in SIC as equivalent to an ownership interest in SLC.

2

for hair removal in Chesapeake, Virginia. Am. Compl. ¶ 23. The Joneses modeled the Center as a spa and used lasers manufactured by Cynosure. Id. In 2002, the Joneses decided to franchise the concept through SLC and prepared a Uniform Franchise Offering Circular ("UFOC"), promotional materials, and a website. Id. The Joneses sold rights to develop Sona Laser Centers in large geographic territories. Id. ¶ 24.

Beginning in 2002, Plaintiffs allege that Sona, the Joneses, and Thomas Noon ("Noon"), SLC's Chief Financial Officer from 2002 until August 2004, made a number of fraudulent misrepresentations on various occasions to each of the Plaintiffs at SLC's corporate headquarters in Virginia Beach, Virginia. Id. ¶ 27. Plaintiffs allege, *inter alia*, that Sona and its principals fraudulently stated that: (1) Sona had a proprietary, patent-pending process and set of treatment protocols called the "Sona Concept" that permanently removed 93-97% of a person's unwanted hair in an average of five treatments; (2) Sona had determined that Cynosure's lasers were the fastest and most powerful available;[2] (3) Sona had an exclusive license for Meladine, a clinically proven product that enabled laser removal of all hair colors, including blonde, gray, and white hairs that were normally very difficult to remove by laser; (4) average monthly revenues for Sona Laser Centers were more than $65,000, with earnings of close to $7,000; and (5) Sona had state-of-the-art training, support, and advertising that would enable franchisees with no prior experience to successfully operate a Sona Laser Center. Id. ¶ 27.

Based on these claims, Plaintiffs signed franchise agreements with SLC and invested significant sums of money to operate Sona Laser Treatment Centers. Id. ¶¶ 47, 49. The

---

[2] Plaintiffs allege Sona did not disclose that Cynosure had a 40% ownership interest in Sona. Am. Compl. ¶ 3.

agreements required that Plaintiffs use Cynosure lasers.  Id. ¶ 50(e).  Thereafter, Plaintiffs discovered, *inter alia*, that: (1) the Sona Concept had no proven medical basis and the lasers removed only 70% of unwanted hair on a temporary basis; (2) Cynosure's lasers were not the best available; (3) Meladine was ineffective and Sona did not have an exclusive license; (4) Sona's revenue and profit representations regarding Sona Laser Centers were based on faulty accounting; and (5) Sona was incapable of providing meaningful support to franchisees.  Id. ¶ 50.  Plaintiffs also allege that Sona's UFOC concerning the actual business performance and potential of Sona Laser Treatment Centers was misleading.  Id. ¶ 4.

The Amended Complaint asserts Sona made these misrepresentations with the "knowledge and support of Cynosure."  Id. ¶ 6.  The Amended Complaint alleges the following facts support Cynosure control of Sona: (1) Cynosure owned 40% of Sona; (2) Dr. Horace Furumoto ("Furumoto"), Cynosure's founder, served on Sona's board of directors; (3) Cynosure guaranteed leases for Sona's corporate owned operations; (4) Sona maintained an exclusive purchasing contract with Cynosure, and Sona required its franchisees to use Cynosure lasers.  Id. ¶ 27.  Plaintiffs allege that Sona, Cynosure, and their principals concealed the true facts regarding Sona's franchise system, and that Cynosure actively participated in the concealment by instructing its staff not to comment on Sona's protocols.  Id. ¶¶ 50(b), 53.  This is the only allegation in the Amended Complaint of specific conduct by Cynosure.

Since Sona is apparently insolvent, Plaintiffs seek to hold Cynosure liable for common law fraud, negligent misrepresentation, civil conspiracy, and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b-q, the Massachusetts Unfair Trade Practices Act, Mass. Gen. L. Ch. 93A, the Minnesota Franchise Act, Minn. Stat. § 80C.01-.30, the Illinois

Franchise Disclosure Act, 815 Ill. Comp. Stat. 705/1 to 705/44, the Maryland Franchise Registration and Disclosure Law, Md. Code Ann., Bus. Reg. §§ 14-201 to 14-233, the Georgia Fair Business Practices Act, Ga. Code Ann. §§10-1-390 to 10-1-407, and the Michigan Franchise Investment Law, Mich. Comp. Laws Ann. §§ 445.1501-.1546.[3]

### III. DISCUSSION

**A.    Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."  Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**B.    Fraud**

In Virginia,[4] the elements of a claim of actual fraud are: "(1) a false representation, (2) of

---

[3] Plaintiffs have stipulated to dismissal with prejudice of all other claims asserted in the Amended Complaint.  Stipulation for Dismissal [Docket No. 26].

[4] Common law claims of fraud, negligent misrepresentation, and civil conspiracy are asserted by all Plaintiffs.  Cynosure argues Virginia law applies to these claims because the bulk of Sona's misrepresentations occurred in Virginia.  Plaintiffs have not argued that another state's law applies.  Accordingly, the Court will apply Virginia law to Plaintiffs' common law claims.

a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled." <u>Evaluation Research Corp. v. Alequin</u>, 439 S.E.2d 387, 390 (Va. 1994).  Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Under Rule 9(b), "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  <u>United States ex rel. Joshi v. St. Luke's Hosp., Inc.</u>, 441 F.3d 552, 556 (8th Cir. 2006).  In other words, the complaint must allege the "who, what, where, when, and how" of the fraud.  <u>United States ex rel. Costner v. URS Consultants, Inc.</u>, 317 F.3d 883, 888 (8th Cir. 2003), <u>citing</u> <u>Abels v. Farmers Commodities Corp.</u>, 259 F.3d 910, 920-21 (8th Cir. 2001).

     Here, the Amended Complaint pleads with considerable specificity the circumstances of Sona's fraud.  However, Plaintiffs bring this action against Cynosure, and therefore Plaintiffs must provide detailed allegations of Cynosure's fraudulent activities.  Plaintiffs rely on the following allegations: (1) Sona, "with the knowledge and full support of Cynosure," made specific misrepresentations to each of the Plaintiffs on various dates at SLC's Virginia Beach, Virginia headquarters; (2) Furumoto, Cynosure's founder and a board member of Sona, knew of and approved of Sona's false representations; and (3) Cynosure itself concealed the falsity of Sona's representations by instructing its employees not to comment on Sona's protocols.  Plaintiffs argue these allegations sufficiently set forth a claim that Cynosure is directly liable for its own fraudulent activities, and that Cynosure is secondarily liable as a control person for

Sona's fraudulent activities.

To the extent Plaintiffs claim Cynosure committed fraud, Plaintiffs' allegations fail to satisfy Rule 9(b).  Plaintiffs must allege specific acts by Cynosure in furtherance of Sona's fraud. Instead of doing so, Plaintiffs seek to hold Cynosure directly liable for all of Sona's fraudulent actions because of its status as a shareholder of 40% of Sona's stock and the fact that Furumoto, Cynosure's founder, served on Sona's board of directors.  Plaintiffs argue based on these facts that Cynosure must have known of and supported Sona's fraudulent misrepresentations.  This argument is entirely speculative and fails to provide the requisite detail as to Cynosure's participation in Sona's alleged fraud.

Plaintiffs allege Cynosure participated by instructing its own employees to withhold comment on Sona's protocols.  However, the Amended Complaint fails to allege facts supporting a finding that Cynosure had a duty to comment on Sona's protocols.  Cynosure was the exclusive laser supplier for Sona's franchisees.  Nevertheless, Sona, the franchisor, provided its franchisees with the protocols for the laser treatments.  The allegations in the Amended Complaint provide no basis for a duty of Cynosure to comment on or correct the protocols Sona provided its franchisees.  Therefore, allegations that Cynosure failed to comment does not bring the Amended Complaint any closer to satisfying Rule 9(b).  Plaintiffs' allegations are inadequate under Rule 9(b) to state a claim that Cynosure is directly liable for fraudulent actions.

Plaintiffs also allege Cynosure is secondarily liable because it controlled Sona through its 40% ownership share, Furumoto's position on Sona's board of directors, certain contracts between Sona and Cynosure, and because Cynosure guaranteed some of Sona's leases.  Plaintiffs argue these allegations are sufficient to state a claim that Cynosure is liable as a control person

of Sona.  In response, Cynosure contends that Virginia common law does not recognize control person liability and therefore Plaintiffs must pierce Sona's corporate veil to hold Cynosure liable for Sona's fraud.  The Court finds Cynosure's arguments persuasive.

Under the common law, the corporate veil must be pierced to hold a corporation's shareholders personally liable for the corporation's debts.  In Virginia, the corporate form is disregarded if one corporation is "so organized and controlled as to become the mere agent or instrumentality" of another.  Lewis Trucking Corp. v. Commonwealth, 147 S.E.2d 747, 753-54 (Va. 1966).  "The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure."  Richfood, Inc. v. Jennings, 499 S.E.2d 272, 276 (Va. 1998) (quotation omitted).  The Amended Complaint alleges Cynosure owned 40% of Sona's shares, guaranteed some of Sona's leases, had a supply contract with Sona, and Cynosure's founder served on Sona's board of directors and was aware of Sona's fraudulent misrepresentations.  These facts fall far short of the allegations necessary to support a finding that Sona was a "mere agent or instrumentality" of Cynosure.

Recognizing this, Plaintiffs do not argue that Sona's corporate veil can be pierced.  Instead, Plaintiffs claim Cynosure is liable for common law fraud because it controlled Sona.  To support this argument, Plaintiffs refer to the Virginia Securities Act ("VSA"), which provides that persons who directly or indirectly control persons who violate the VSA are jointly and severally liable to the same extent as the controlled person.  Va. Code § 13.1-522(C).  The VSA defines control as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting

securities, by contract, or otherwise." Va. Code § 13.1-501. Plaintiffs seek to use this definition of control person liability, which is less demanding than the standard for piercing the corporate veil, to hold Cynosure liable for Sona's alleged common law fraud. However, statutes such as the VSA explicitly create control person liability because it does not exist under the common law. See Casteglen, Inc. v. Commonwealth Sav. Ass'n, 689 F. Supp. 1069, 1072 (D. Utah 1988) (noting in federal securities law context that Congress created control person liability because "[p]ersons who effectively control persons . . . often would not be subject to liability under traditional agency theories"). Therefore, Plaintiffs can not extend control person liability beyond the circumstances provided for in the VSA and other Virginia statutes. Accordingly, the fraud claim in Count 1 of the Amended Complaint must be dismissed because Plaintiffs fail to satisfy Rule 9(b) regarding their claim that Cynosure itself committed fraudulent acts, and Plaintiffs have failed to allege facts necessary to pierce the corporate veil to hold Cynosure liable for Sona's acts.

**C.  Negligent Misrepresentation**

Cynosure argues that Plaintiffs' negligent misrepresentation claim, asserted in Count 2 of the Amended Complaint, must be dismissed because Virginia law does not recognize such a tort. See Bentley v. Legent Corp., 849 F. Supp. 429, 434 (E.D. Va. 1994). Plaintiffs fail to address this argument. Thus, Count 2 of the Amended Complaint is dismissed. Alternatively, the Court finds that even if Plaintiffs' negligent misrepresentation claim is construed as a claim for constructive fraud,[5] the analysis above regarding Plaintiffs' actual fraud claim applies and

---

[5] In Virginia, "[c]onstructive fraud differs from actual fraud in that the misrepresentation of material fact . . . is made innocently or negligently although resulting in damage to the one relying on it." Evaluation Research Corp., 439 S.E.2d at 390.

9

dismissal is still proper.

D.      **State Consumer Protection Statutes**

   1.      **Connecticut Unfair Trade Practices Act**

Count 3 of the Amended Complaint asserts that Cynosure violated the Connecticut Unfair Trade Practices Act ("CUTPA").  The CUTPA states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  The definition of "person" includes a corporation.  Conn. Gen. Stat. § 42-110a(3).  The CUTPA provides that Connecticut courts should be guided by interpretations given by the Federal Trade Commission ("FTC") and the federal courts to Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).

Cynosure argues the CUTPA claims must be dismissed because the Amended Complaint fails to allege Cynosure directly engaged in unfair or deceptive conduct, and because there is no viable alternative theory of liability for the CUTPA claims.  In response, the Connecticut Plaintiffs[6] urge that the allegation that Cynosure suppressed the truth by instructing its employees not to comment on Sona's protocols is sufficient to state a CUTPA claim based on Cynosure's direct conduct.  However, as with Plaintiffs' fraud claim, Cynosure's failure to comment on Sona's protocols can not constitute an unfair or deceptive trade practice unless Cynosure had a duty to comment on those protocols.  See McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc., 890 A.2d 140, 162 (Conn. Ct. App. 2006) ("Where a plaintiff alleges that a defendant's *passive* conduct violates CUTPA . . . common sense dictates that a court should inquire whether the defendant was under any obligation to do what it

---

[6] The Coadys, KAI, Rubin, and MRA assert CUTPA claims.

refrained from doing.") (emphasis in original, citations omitted).  As discussed above, the facts alleged in the Amended Complaint do not support a finding that Cynosure had a duty to comment on the protocols Sona provided to its franchisees.  Therefore, the Amended Complaint's allegations of Cynosure's direct conduct do not state a claim under the CUTPA.

The Connecticut Plaintiffs also argue the allegation that Cynosure controlled Sona is sufficient to hold Cynosure liable under the CUTPA for Sona's misleading UFOC and fraudulent misrepresentations.  To support this control person argument, the Connecticut Plaintiffs rely on cases holding that individuals may be liable under the FTC Act if the FTC establishes corporate liability and "show[s] that the individual defendants participated directly in the practices or acts or had authority to control them.  Authority to control the company can be evidenced by active involvement with business affairs and the making of corporate policy . . . ." F.T.C. v. Amy Travel Serv., Inc., 875 F.2d 564, 573 (7th Cir. 1989).  These cases establish that if liability is premised on an individual's authority to control, the FTC must "demonstrate that the individual had some knowledge of the practices." Id.  However, in each of the authorities the Connecticut Plaintiffs cite, control person liability claims were asserted against individual corporate officers or directors involved in the day-to-day affairs of the corporation.  See Amy Travel Serv., 875 F.2d at 573-75 (two corporate officers); United States v. Bldg. Inspector of Am., Inc., 894 F. Supp. 507, 518 (D. Mass. 1995) (three individuals, including president, treasurer, and sales employee); F.T.C. v. World Media Brokers, 415 F.3d 758, 764-66 (7th Cir. 2005) (two officers).  These cases are distinguishable from the instant case because there is no allegation that Cynosure or Furumoto, assuming his conduct can be imputed to Cynosure, was involved in Sona's day-to-day affairs or the alleged misrepresentations.

The lone CUTPA case the Connecticut Plaintiffs refer to is <u>Bailey Employment Sys., Inc. v. Hahn</u>, 545 F. Supp. 62, 72 (D. Conn. 1982), where a franchisor's president was held liable for making misrepresentations to franchisees.  <u>Bailey</u> is distinguishable from the instant case, however, because the Amended Complaint does not allege that Cynosure or Furumoto, acting on Cynosure's behalf, made any fraudulent misrepresentations.[7]  Absent such an allegation, this Court finds that the Connecticut Plaintiffs must pierce Sona's corporate veil to hold Cynosure liable for Sona's fraudulent misrepresentations.

The standard for piercing the corporate veil in Connecticut is similar to that in Virginia. <u>See</u> <u>SFA Folio Collections, Inc. v. Bannon</u>, 585 A.2d 666, 672 (Conn. 1991) (noting that "in Connecticut a court will disregard the corporate structure and pierce the corporate veil only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice") (quotation marks and citation omitted).  The Connecticut Plaintiffs do not argue that the Amended Complaint alleges facts supporting veil piercing.  Accordingly, the CUTPA claim in Count 3 of the Amended Complaint is dismissed.

### 2.    **Massachusetts Unfair Trade Practices Act**

Count 4 of the Amended Complaint asserts claims against Cynosure under the Massachusetts Unfair Trade Practices Act.[8]  That statute, codified in Chapter 93A of the General Laws of Massachusetts, prohibits "[u]nfair methods of competition and unfair or deceptive acts

---

[7] Again, the Amended Complaint has alleged no facts that Cynosure had a duty to comment on Sona's protocols.

[8] The Coadys and KAI assert claims under the Massachusetts statute.

or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). FTC case law serves as guidance for courts interpreting this language. Mass. Gen. Laws ch. 93A, § 2(b). "[A] Chapter 93A action can be brought against a party with which the plaintiff had only an indirect legal or business relationship." Speakman v. Allmerica Fin. Life Ins. & Annuity Co., 367 F. Supp. 2d 122, 142 (D. Mass. 2005). However, " a corporation's parents, subsidiaries, and other affiliates are not liable for the actions of the corporation under Chapter 93A unless they played an active role in the alleged unlawful conduct." Id. Chapter 93A claims against corporate affiliates must be based on "specific allegations of alleged misconduct." Id.

In the instant case, the allegations in the Amended Complaint fail to sufficiently allege that Cynosure played an active role in Sona's fraudulent misrepresentations and misleading UFOC documents. As discussed above, allegations that Cynosure knew of and supported Sona's fraudulent misrepresentations are vague and conclusory. Similarly deficient is the speculation that Cynosure must have known of and supported Sona's fraudulent statements because of Cynosure's status as a substantial shareholder and Furumoto's service on Sona's board. The Amended Complaint's only allegation of specific conduct of Cynosure is that Cynosure failed to comment on Sona's protocols. Without a corresponding duty, however, this allegation is insufficient to support a claim. The Amended Complaint fails to adequately allege that Cynosure engaged in unlawful conduct or played an active role in Sona's alleged unlawful conduct, and therefore the Chapter 93A claim in Count 4 must be dismissed.

### 3. Georgia Fair Business Practices Act

Count 12 of the Amended Complaint asserts a claim against Cynosure under the Georgia Fair Business Practices Act ("GFBPA"), which states that "unfair or deceptive acts or practices

in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." Ga. Code Ann. § 10-1-393.  The GFBPA provides that FTC Act case law is guiding precedent.  Id. § 10-1-391.  The Court finds that the analysis above regarding the CUTPA claim also applies to the GFBPA claim.  Therefore, for the reasons stated above, the allegations in the Amended Complaint do not sufficiently allege that Cynosure itself engaged in unlawful conduct under the GFBPA.  Thus the Georgia Plaintiffs[9] must rely on allegations of control person liability.  However, the Georgia Plaintiffs fail to provide any authority that a minority shareholder who controls one director of a corporation may be liable as the corporation's control person under the GFBPA where there is no allegation that the stockholder or the director participated in the corporate acts complained of.  Absent such authority, this Court finds that the Georgia Plaintiffs must pierce Sona's corporate veil to hold Cynosure liable for Sona's fraudulent misrepresentations and misleading UFOC.  Since the facts alleged in the Amended Complaint do not support veil piercing, Count 12 of the Amended Complaint must be dismissed.

**E.     State Franchise Act Claims**

    **1.     Minnesota Franchise Act**

Count 8 of the Amended Complaint asserts Cynosure is liable as a control person under the Minnesota Franchise Act ("MFA") for Sona's false and misleading statements, Sona's failure to follow UFOC guidelines, and Sona's omission of material information in connection with the

---

[9] The Korners and June 3 assert GFBPA claims.

franchise sale from SLC to LTS.[10] The MFA provides that:

> Every person who directly or indirectly controls a person liable under subdivision 1, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions and every employee of a person so liable who materially aids in the act or transaction constituting the violation is also liable jointly and severally with and to the same extent as such person . . . .

Minn. Stat. § 80C.17, subd. 2. Neither Cynosure nor the Minnesota Plaintiffs[11] provide authority regarding the standard for assessing control person liability under the MFA. However, the Minnesota Supreme Court has interpreted similar language in the Minnesota Securities Act, Minn. Stat. §§ 80A.01-.30, as requiring that plaintiffs establish that: (1) the defendant actually participated in the general operations of the violator; and (2) the defendant had the power to control the specific transaction at issue. Semrad v. Edina Realty, 493 N.W.2d 528, 532-33 (Minn. 1992), citing Metge v. Baehler, 762 F.2d 621, 631 (8th Cir. 1985).

The Amended Complaint asserts Cynosure controlled Sona because: (1) Cynosure owned a 40% interest in Sona; (2) Cynosure guaranteed some of Sona's leases; (3) Cynosure had an exclusive purchasing contract with Sona; and (4) Furumoto, Cynosure's founder, served on Sona's board of directors. Am. Compl. ¶¶ 27, 51. However, assuming these facts are true, they do not suggest Cynosure participated in Sona's general operations or that Cynosure had the power to control the fraudulent statements Sona allegedly made to the Minnesota Plaintiffs in connection with the sale of a franchise from SLC to LTS. Therefore, the MFA claim in Count 8

---

[10] Count 8 of the Amended Complaint also alleges Cynosure has primary liability under the MFA. See Am. Compl. ¶ 95. However, the Amended Complaint contains no allegations of Cynosure's direct involvement in the sale of the franchise from SLC to LTS.

[11] Berglund and LTS assert MFA claims.

15

of the Amended Complaint must be dismissed.

### 2. Illinois Franchise Disclosure Act

Count 9 of the Amended Complaint asserts that Cynosure is liable as a control person[12] for Sona's alleged violations of the Illinois Franchise Disclosure Act ("IFDA").[13]  The language of the IFDA regarding control persons is virtually identical to the language of the MFA quoted above.  See 815 Ill. Comp. Stat. 705/26.  For the reasons set forth above regarding the MFA claim, the Court finds the IFDA claim in Count 9 of the Amended Complaint must be dismissed because the Amended Complaint fails to sufficiently allege that Cynosure participated in Sona's general operations and that Cynosure had the power to control Sona's conduct in the franchise sales at issue.

### 3. Maryland Franchise Registration and Disclosure Law

Count 10 of the Amended Complaint asserts that Cynosure is liable as a control person[14] under the Maryland Franchise Registration and Disclosure Law.[15]  That statute provides that "[j]oint and several liability . . . extends to each person who directly or indirectly controls a person liable under this section."  Md. Code Ann., Bus Reg. § 14-227(d)(1)(i).  For the reasons stated above, the Court finds that the Amended Complaint does not state a claim that Cynosure is

---

[12] The Illinois Plaintiffs also allege Cynosure has primary liability under the IFDA.  See Am. Compl. ¶ 102.  However, the Amended Complaint contains no allegations of Cynosure's direct involvement in the franchise sales.

[13] The Delmontes, Karsten, and Kardel assert IFDA claims.

[14] The Amended Complaint alleges Cynosure has primary liability under the Maryland statute.  See Am. Compl. ¶ 109.  However, the Amended Complaint does not allege that Cynosure was involved in the franchise sales to the Maryland Plaintiffs.

[15] Amoruso, CapitalWorks, and Revella assert claims under the Maryland statute.

liable as a control person under the Maryland statute. Therefore, Count 10 of the Amended Complaint must be dismissed.

### 4. Michigan Franchise Investment Law

Count 15 of the Amended Complaint asserts that Cynosure is liable as a control person for Sona's alleged Michigan Franchise Investment Law violations.[16] The Michigan statute's language regarding control person liability is identical to the language in the Minnesota statute quoted above. See Mich. Comp. Laws Ann. § 445.1532. For the reasons stated above, the Court finds that the Amended Complaint does not state a claim that Cynosure is liable as a control person under the Michigan statute. Therefore, Count 15 of the Amended Complaint must be dismissed.

### F. Civil Conspiracy

In Virginia, "[a] civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." Glass v. Glass, 321 S.E.2d 69, 74 (Va. 1984). To survive a motion to dismiss, a common law civil conspiracy claim must allege that an unlawful act was committed. Almy v. Grisham, 639 S.E.2d 182, 188 (Va. 2007); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985). Here, Plaintiffs' civil conspiracy claim is premised upon their common law claims of fraud and negligent misrepresentation, the state consumer protection act claims, and the state franchise act claims. Since all of these claims are dismissed, the civil conspiracy claim in Count 6 of the Amended Complaint must also be dismissed. Thus, all of Plaintiffs' claims are dismissed and Cynosure's Motion to Dismiss is granted.

---

[16] Alden and Patty assert claims under the Michigan statute.

**G.      Leave to Amend**

Plaintiffs request leave to amend their pleading if this Court dismisses, as it has, the fraud and negligent misrepresentation claims. See Mem. in Opp. to Mot. to Dismiss [Docket No. 21] at 10. Plaintiffs do not specifically request leave to amend the other counts of the Amended Complaint. However, the Court presumes Plaintiffs' request encompasses all counts of the Amended Complaint. The relevant part of Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." "However, parties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim[s]." Wisdom v. First Midwest Bank, 167 F.3d 402, 409 (8th Cir. 1999).

The instant action was filed on September 29, 2006. Compl. [Docket No. 1]. Cynosure moved to dismiss on January 3, 2007. Mot. to Dismiss [Docket No. 4]. At that point Plaintiffs were put on notice that Cynosure intended to challenge the sufficiency of Plaintiffs' allegations. Although Plaintiffs subsequently filed their Amended Complaint on January 24, 2007 to add new parties and claims, the specific allegations against Cynosure remained the same. Had they had a factual basis to do so, Plaintiffs should have bolstered their allegations with more specific facts to cure the deficiencies raised by Cynosure's Motion to Dismiss. Although Plaintiffs have requested leave to amend once again now that their claims are dismissed, they have not shown how their claims can be saved. On these facts, the Court finds that Plaintiffs' request for leave to amend should be denied because any attempted amendment would be futile. See Knapp v. Hanson, 183 F.3d 786, 790 (8th Cir. 1999) (noting that "futility constitutes a valid reason for denial of a motion to amend").

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Amended Motion to Dismiss [Docket No. 16] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


　　　　　s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 22, 2007.